### PUGH v. HENRITZY et al.
### No. 14682.

Court of Appeal of Louisiana. Orleans.

Dec. 11, 1933.

Deutsch & Kerrigan & Burke, of New Orleans, for appellants.

Bernard J. McCloskey, of New Orleans, for appellee.

HIGGINS, Judge.

The plaintiff seeks to recover from the defendants, in solido, $293.15, covering property damages said to have resulted when the defendant's Packard car, driven by an employee, ran into the plaintiff's Chevrolet automobile at the intersection of N. Galvez and St. Philip streets, in this city, on October 7, 1932, at about 9 o'clock a. m. The driver of the Packard car is alleged to be solely at fault in causing the accident in failing to keep a proper lookout, in not according to the Chevrolet car the right of way which it had gained by pre-empting the intersection, and in driving the Packard car into the intersection at a reckless and unlawful rate of speed, in violation of the traffic ordinance of the city of New Orleans, No. 13702 C. C. S.

Defendant answered, admitting that there was a collision, but denying the allegations of the petition, and averring that the proximate cause of the accident was the negligence of the driver of the Chevrolet car in failing to accord the Packard the right of way which it was entitled to under the provisions of the traffic ordinance, having approached the Chevrolet from the right, and in approaching the intersection without sounding his horn and without looking to his right, or, having looked in that direction, not seeing the Packard, and in the alternative defendant specially pleaded contributory negligence.

There was judgment in favor of the plaintiff for the sum of $225.95, and defendants have appealed. Plaintiff has answered the appeal, and asked that the amount awarded be increased to the full amount prayed for.

The evidence shows that the Packard was being driven on St. Philip street from the lake toward the river and the Chevrolet on N. Galvez street from downtown toward Canal street. These thoroughfares intersect each other at right angles, and are both paved, St. Philip street, which is a one-way

street in the direction of the river under the provisions of the traffic ordinance, being 30 feet in width, and N. Galvez street being 28 feet in width. The machines collided in the intersection, the front bumper of the Packard striking the right rear wheel and fender of the Chevrolet, which stopped against an iron post on the uptown river corner of the intersection, where it had been driven by the impact, and the Packard came to rest adjacent to the other automobile, which was badly damaged.

The driver of the Chevrolet and George V. Legardeur, who was driving his automobile in the rear of the plaintiff's car, testified that the Chevrolet entered the intersection at about 10 or 12 miles an hour, and was practically two-thirds across when the Packard, approaching the corner at a speed of approximately 35 or 40 miles an hour, ran into the right rear side of the Chevrolet automobile.

The driver of the Packard states that, as he approached the corner, he blew his horn and reduced his speed to about 14 miles an hour, and, as he entered the intersection, he noticed the plaintiff's car coming at a speed of about 30 or 40 miles an hour; that he applied his brakes, but, in spite of his efforts to stop, the right front bumper of his car struck the rear right fender and side of the Chevrolet; that the Packard stopped in the intersection, and the Chevrolet continued on its course toward its left for 7 or 8 feet and struck an iron post on the uptown river corner of the intersection.

Defendant also produced an investigator of the insurance carrier, who testified that on the day following the accident the driver of the Chevrolet stated that the Packard approached the intersection at a rate of speed of about 18 or 20 miles an hour.

Neither of the streets involved are designated as right of way streets under the provisions of the traffic ordinance, which sets forth that, where two vehicles approach such an intersection at approximately the same time, the car approaching from the right shall have the right of way over the one approaching from the left. The ordinance further provides that, when a right of way street intersects a non-right of way street, and a vehicle on the less favored street enters the intersection first, it thereby gains the right of way and is entitled to complete the crossing. But it is also stated in the ordinance that the mere fact that an automobile has the right of way does not give the driver thereof the right to drive across an intersection in a reckless or careless manner.

We believe the evidence shows the Chevrolet car reached the intersection before the Packard, and that the defendant's car was being operated at a reckless and unlawful rate of speed, as shown by the plaintiff's evidence and the fact that the Chevrolet was extensively damaged.

The driver of the Chevrolet admits that he did not see the Packard until the moment of the impact. If he had looked to his right, the only direction from which traffic should approach on St. Philip street, since it was a one-way thoroughfare, he could easily have discovered the presence of the on-coming Packard and brought his own car to a stop, as he was only traveling about 10 or 12 miles an hour.

In the case of Gibbens v. N. O. Terminal Co., 159 La. 347, 105 So. 367, 368, the Supreme Court said: "The rule of law is that a person is held to have seen that which he could have seen and should have seen."

In Murphy v. Star Checker Cab, Inc., 150 So. 79, 80 in a case where the plaintiff admittedly had the right of way, we held (syllabus): "That motorist has statutory right of way at intersection does not justify blindly and recklessly dashing into path of on-coming disaster." See, also, Thomas v. Roberts (La. App.) 144 So. 70; Goff v. Southern Coffee Mills (La. App.) 144 So. 513; Holderith v. Zilbermann et al., 151 So. 670 of this court, this day decided.

It is our opinion that the accident was the result of the joint and concurrent negligence of both drivers.

■ Counsel for plaintiff contends that, even conceding that the driver of the Chevrolet was guilty of negligence which contributed to the accident, his negligence cannot be imputed to the plaintiff in bar of his right to recover because the driver thereof was not the agent or employee of the plaintiff. The evidence in reference to this issue is to the effect that Johnson, the driver of plaintiff's car, operated an automobile repair shop; that the day preceding the accident the plaintiff, who was an engineer on a ship, 'phoned Johnson that his car needed certain repairs, and that, as his ship was about to leave port, plaintiff would have his wife drive the automobile to the garage; that Johnson would then drive her back home in the car and return with it for the purpose of making the repairs and thereafter deliver it to the plaintiff's home; that the price for the repairs included the delivery of the car, and amounted to $7.50; that, after driving the plaintiff's wife home and while returning to his shop with the automobile, the accident occurred. Johnson several times in his testimony reiterated that the charge of $7.50 included the service for driving the plaintiff's wife home and also for the delivery of the car after the repairs were completed.

The question of whether or not the mechanic was the agent or servant of the plaintiff, or an independent contractor under the circumstances of the case, presents an interesting legal problem which, it appears, has not been decided by the courts of this state. However, this question has been considered by courts of other jurisdictions. In the case of Andres

v. Cox, 223 Mo. App. 1139, 23 S.W.(2d) 1066, 1070, (St. Louis Ct. of App.) the garageman, after making repairs on the defendant's car, drove out to plaintiff's home, but, finding no one there, was returning to his shop, when he negligently ran into and injured the plaintiff. A demurrer to the evidence was filed by the defendant on the ground that the driver was an independent contractor and not the agent of the plaintiff. In overruling the demurrer the court said:

"That Redel was exercising an independent occupation as a repair man, and rendered the service of repairing the appellant's car in the course of such occupation, and under circumstances which made him an independent contractor as to that service, there seems to be no question, but it does not necessarily follow from this that he was an independent contractor as to the service he rendered in an attempt to deliver the car to the appellant after the repairs were made. The delivery of the car was no part or concomitant of his independent occupation as a repair man. Nor was it a necessary or usual incident to the work of repairing the car. It was not a part of his duties as a repair man, under his contract of employment to repair the car, unless made so by the express terms of the contract. In the absence of a contract or custom, the bailee of a car, for the purpose of making repairs upon it, is under no obligation to make delivery of the car to the owner, either at his place of business or his residence. Marron v. Bohannan, 104 Conn. 467, loc. cit. 470, 133 A. 667, 46 A. L. R. 838. In the present case no custom of making such delivery was shown. So far as the evidence shows, Redel never delivered cars upon which he had made repairs to the owners at their homes or places of business, or at any other place away from his repair shop, except that on a number of occasions he delivered the appellant's car to her at her home, and this was done as a mere accommodation or favor, and only as suited his convenience, and without any obligation to do so. If the driving of appellant's car by Redel in his attempt to deliver it at her home was done, upon completion of the repairs he was employed to make, as a mere accommodation or favor to her, and with her acquiescence and consent, and not in pursuance of an agreement with him to include this act of driving as a part of the general charge inclusive of the repairs to the car, then in so driving the car he was acting as a servant, and not as an independent contractor, and if he was acting as her servant in so driving her car to her home, and on arriving at her home found no one there to receive the car, he had implied authority to return the car to his shop, and, if he did so, without any request or direction from her to do so for the purpose of making further repairs upon it, he was, in so doing, still acting as her servant."

See, also, Marron v. Bohannan, 104 Conn. 467, 133 A. 667, 46 A. L. R. 838, Holloway v. Schield, 294 Mo. 521, 243 S. W. 163.

In the instant case the evidence is uncontradicted that the charge for the repairs included the service of the garageman in bringing plaintiff's wife home and returning the car to be repaired. Under the above authorities, the garageman only becomes the agent or servant of the owner of the automobile when he performs the service of delivering the automobile as an accommodation, or favor to the owner, but not where the owner is charged for this service in connection with the repairs.

We conclude that Johnson, the repairman, was not the agent or servant of the plaintiff, since he was charging for the service he was performing at the time of the accident in connection with the repair of the machine, and hence was an independent contractor. Therefore his negligence is not imputable to the plaintiff.

As to the quantum, the evidence shows that three estimates were made by different garages, one for $293.15, another one for $225.95, and another for $192.10. The trial judge concluded that the bid of $225.95 represented a reasonable and fair estimate of the cost of putting the car in first-class order. We see nothing in the record which would justify us in either increasing or reducing the amount allowed.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.